IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED JUN 2 8 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES INTERNATIONAL )
TRADE COMMISSION, )
   Appellant, )
)
v. ) No. 1:10cv367
)
MICHAEL JAFFE, *et al.*, )
   Appellees. )

## MEMORANDUM OPINION

This bankruptcy appeal presents the novel question whether 11 U.S.C. § 362(b)(4), the police and regulatory power exception to the § 362 automatic stay, operates to except from the stay a U.S. International Trade Commission ("ITC") investigation undertaken pursuant to § 337 of the Tariff Act of 1930, ch. 497, 46 Stat. 590, 703 (codified as amended at 19 U.S.C. § 1337 (2006)).

I.

LSI Corporation ("LSI"), not a party to this appeal, is the owner of U.S. Patent No. 5,227,335 ("the '335 patent"). On April 18, 2008, LSI and another corporation filed a complaint alleging that certain named respondents had imported into the United States various infringing semiconductor integrated circuits using tungsten metallization, in violation of § 337 of the Tariff Act of 1930.[1] After a preliminary ITC investigation of this complaint, the ITC on May 14, 2008, ordered a formal investigation be "instituted to determine whether there is a violation of

---

[1] In pertinent part, § 337 of the Tariff Act of 1930, as currently amended and codified at 19 U.S.C. § 1337, makes unlawful "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that . . . infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B).

subsection (a)(1)(B) of section 337" on the ground that the named respondents had allegedly imported products infringing the '335 patent.[2] Thereafter, Qimonda AG ("Qimonda"), a German corporation in insolvency proceedings in that country, was named as an additional respondent in the course of the investigation.

On June 15, 2009, Qimonda filed a petition for recognition of its pending German insolvency proceeding under Chapter 15 of the Bankruptcy Code, 11 U.S.C. §§ 1501-1532, which petition was granted by the Bankruptcy Court on July 22, 2009. In granting the petition, the Bankruptcy Court appointed appellant Michael Jaffé as the Foreign Administrator.[3] Pursuant to 11 U.S.C. § 1520, which lists the provisions automatically applicable on the U.S. recognition of a foreign proceeding, the Chapter 15 filing automatically stayed other pending U.S. litigation against Qimonda under 11 U.S.C. § 362(a). Although the ITC argued that its § 337 investigation involving Qimonda was exempt from the automatic stay under the police and regulatory power exception codified at 11 U.S.C. § 362(b)(4), the Bankruptcy Court rejected this argument on the following grounds: (i) that the ITC § 337 investigation was brought by LSI, not the ITC; and (ii) that the ITC was not acting in a regulatory capacity. *See In re Qimonda AG*, 425 B.R. 256

---

[2] *See* In the Matter of Certain Semiconductor Integrated Circuits Using Tungsten Metallization and Products Containing Same; Notice of Investigation, 73 Fed. Reg. 29634, 29635 (May 21, 2008). Eighteen respondents were originally named in the Federal Register notice, all of whom were suspected of importing allegedly infringing articles. *See id.* at 29635; *see also* 19 C.F.R. § 210.3 (defining "respondent" to mean "any person named in a notice of investigation issued under this part as allegedly violating section 337 of the Tariff Act of 1930").

[3] Under Chapter 15 of the Bankruptcy Code, a Foreign Representative is appointed to represent the foreign debtor in U.S. courts and, as such, is authorized to seek relief pursuant to the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 1509, 1512 (creating right of direct access and permitting Foreign Representative "to participate as a party in interest in a case regarding the debtor under this title").

(Bankr. E.D. Va. 2010). Whether the Bankruptcy Court erred in concluding that § 362(b)(4) does not apply to the ITC § 337 investigation involving Qimonda is the merits issue presented here.

The parties fully briefed the matter[4] and appeared, by counsel, at a June 18, 2010 hearing. The matter was taken under advisement, and thereafter the parties submitted supplemental briefs. Accordingly, the appeal is ripe for disposition.

## II.

Resolution of the question presented requires a brief summary and understanding of the pertinent statutory and regulatory framework governing ITC § 337 investigations.

The ITC is an independent federal agency created by Congress with broad investigative responsibilities in matters of international trade. It is comprised of both the Commission itself, which has six members appointed by the President and confirmed by the Senate, and administrative law judges ("ALJs"). Pertinent here is that § 337 of the Tariff Act of 1930 tasks the ITC with investigating, *inter alia*, the importation into the United States of articles that "infringe a valid and enforceable United States patent" or articles that "are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B). Specifically, the ITC is required by statute to "investigate any alleged violation of [section 1337] on complaint under oath or on its initiative." *Id.* § 1337(b)(1). Significantly, an ITC "investigation" is defined as "a formal

---

[4] It is worth noting that appellees' response brief argues only that the appeal will become moot on July 13, 2010, the date on which the patent underlying the ITC § 337 investigation expires. On the merits, appellees rely on their brief below, which was submitted as an attachment to their response brief. As this Memorandum Opinion issues prior to the July 13, 2010 expiration of the '335 patent, the issue of mootness need not be reached or addressed.

Commission inquiry instituted to determine whether there is a violation of section 337 of the Tariff Act of 1930." 19 C.F.R. § 210.1.

The procedures attendant to ITC § 337 investigations are codified at 19 U.S.C. § 1337 and 19 C.F.R. Part 210 (2010) (Adjudication and Enforcement). Where, as here, the ITC § 337 investigation relies on information submitted in a complaint by a private party, it is noteworthy that the filing of the complaint does not initiate a formal ITC § 337 investigation; rather, the action simply results in a "preinstitution proceeding," in which the ITC "examine[s] the complaint for sufficiency and compliance," and performs a preliminary investigation.[5] Importantly, the formal ITC § 337 investigation on a complaint does not begin until the ITC "determine[s] whether the complaint is properly filed and whether an investigation should be instituted on the basis of the complaint," and thereafter provides official notice by publication in the Federal Register.[6] In addition to publication in the Federal Register, the ITC provides direct notice of the investigation to the U.S. Department of Health and Human Services, the U.S. Department of Justice, the Federal Trade Commission, the U.S. Customs Service, and "such other agencies and departments as the Commission considers appropriate" by serving copies of the complaint. *See* 19 C.F.R. § 210.11(a)(4).

Thereafter, the matter is referred to an ALJ for an initial determination on whether the named respondent has violated § 337 of the Tariff Act of 1930. The process of arriving at this

---

[5] *See* 19 C.F.R. § 210.8 ("A preinstitution proceeding is commenced by filing with the Secretary a signed original complaint . . . ."); *id.* § 210.9 (detailing actions required on receipt of complaint).

[6] 19 C.F.R. § 210.10(a)-(b) ("An investigation shall be instituted by the publication of a notice in the Federal Register.").

determination is adversarial in nature. Federal regulations permit parties to take discovery, issue subpoenas, make motions for default and summary determinations, and present evidence at a trial-like hearing. *See id.* §§ 210.15 to 210.18, 210.26 to 210.38. At the conclusion of this process, the ALJ certifies the record to the six-member Commission and files an initial determination concerning whether a § 337 violation has occurred. *See id.* § 210.42. In reviewing the ALJ's initial determination *sua sponte* or on a party's motion,[7] the Commission is required by statute to "consult with, and seek advice and information from, the Department of Health and Human Services, the Department of Justice, the Federal Trade Commission, and such other departments and agencies as it considers appropriate." 19 U.S.C. § 1337(b)(2). To that end, the Commission accepts "written submissions from the parties, other Federal agencies, and interested members of the public on the issues of remedy, the public interest, and bonding by the respondents." 19 C.F.R. § 210.46(a). In sum, therefore, the Commission must consider the effect its final determinations will "have upon the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers." *Id.* § 210.50(a)(2).

Where the ITC—that is, the ALJ and the six-member Commission—determines that a respondent has violated § 337 of the Tariff Act of 1930, the ITC may "direct that the articles concerned, imported by any person violating the provision of [§ 1337], be excluded from entry into the United States." 19 U.S.C. § 1337(d). Neither § 1337 nor its implementing federal

---

[7] If the parties do not petition the Commission to review the ALJ's initial determination, and the Commission itself declines to review the initial determination *sua sponte*, the initial determination automatically becomes a final determination after the applicable period of time specified in 19 C.F.R. § 210.42(h). *See* 19 C.F.R. §§ 210.43 to 210.44 (prescribing procedures for ITC review).

regulations permit an award of monetary damages to complainants. Notably, notwithstanding the finding that a violation has occurred, the ITC may conclude that exclusion of the article is not warranted on the ground that ordering exclusion does not further "the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." *Id.*

Following the issuance of the ITC's determination and its publication in the Federal Register, the determination is transmitted to the President for review. Within 60 days of receiving the determination, "the President, for policy reasons, [may] disapprove[] such determination and notif[y] the Commission of his disapproval." *Id.* § 1337(j)(2). Absent presidential action, the ITC's determination becomes final at the conclusion of the 60-day review period. *See id.* § 1337(j)(4).

This statutory and regulatory framework is the lens through which the Bankruptcy Court's decision in this matter must be viewed.

### III.

Whether the ITC § 337 investigation of Qimonda falls within the police and regulatory power exception of § 362(b)(4) is a question of statutory interpretation reviewed *de novo* on appeal. *See United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002) ("We review questions of statutory interpretation *de novo*."); *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 206 (4th Cir. 1997) (stating well-settled rule that a district court "review[s] the bankruptcy court's factual findings for clear error . . . [and] questions of law *de novo*."). As always with respect to questions of statutory interpretation, the analysis appropriately begins with the text of the statute. *See United States v. Midgett*, 198 F.3d 143, 145-

46 (4th Cir. 1999).

The police and regulatory power exception to the automatic stay applicable in bankruptcy proceedings states, as follows:

> (b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
>
> . . .
>
> (4) . . . of the commencement or continuation of an action or proceeding *by a governmental unit* . . . to enforce such governmental unit's . . . *police or regulatory power*, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4) (emphases added).[8] Thus, by its plain terms, § 362(b)(4) applies only where (i) the action is brought by the government, and (ii) the action seeks to vindicate the public interest, as opposed to a specific individual's or entity's rights. *See E.E.O.C v. McLean Trucking Co.*, 834 F.2d 398, 401-02 (4th Cir. 1987); 3 Collier on Bankruptcy ¶ 362.05[5][b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2010).

The ITC § 337 investigation of respondents, including Qimonda, fits squarely within the § 362(b)(4) statutory exception to the automatic stay. To begin with, there can be no dispute that the ITC § 337 investigation involving Qimonda is brought by a "governmental unit," which is defined by the Bankruptcy Code to include a "department, agency, or instrumentality of the United States."[9] 11 U.S.C. § 101(27). This is so because the International Trade Commission is

---

[8] It is worth noting again that § 362 automatically applies in Chapter 15 proceedings by virtue of 11 U.S.C. § 1520(a)(1) (stating that § 362 is mandatory relief granted "[u]pon recognition of a foreign proceeding").

[9] The Bankruptcy Court's reliance on *Hudson River Sloop Clearwater, Inc. v. Revere Copper and Brass, Inc. (In re Revere Copper and Brass, Inc.)*, 32 B.R. 725 (S.D.N.Y. 1983), in arriving at a contrary conclusion, is misplaced. There, two private non-governmental organizations—namely Hudson River Sloop Clearwater, Inc., and Natural Resources Defense

an independent federal agency created by Congress.[10] In addition, as the Federal Register confirms, the ITC took affirmative steps to order the commencement of a § 337 investigation. *See* 73 Fed. Reg. at 29634. Although information forming the basis of the investigation was initially provided by LSI in its complaint, it is important to note that the investigation did not begin with the filing of the LSI complaint. Indeed, 19 C.F.R. § 210.8 defines the filing of the complaint to be a "*pre*institution proceeding" that simply prompts the ITC to examine the complaint and conduct "*informal* investigatory activity." 19 C.F.R. §§ 210.8 to 210.9 (emphases added). Rather, the ITC § 337 investigation commenced only after the ITC considered the LSI complaint and concluded that an investigation was warranted. *See* 73 Fed. Reg. at 29634 (explaining that investigation would commence given the ITC's consideration of the complaint). Thus, these facts and the regulatory scheme are sharply at odds with the Bankruptcy Court's statement that "LSI and [another complainant] have controlled the litigation from the beginning."

---

Council, Inc.— brought a Clean Water Act enforcement action against Revere Copper and Brass, Inc., which had filed for bankruptcy under Chapter 11. The court, construing § 362(b)(4), held that the police and regulatory power exception did not apply because the plaintiffs were private entities, not governmental units. *Id.* at 727. Accordingly, *Revere Copper and Brass* supports, and does not undermine, the conclusion that an ITC § 337 investigation is brought by a governmental unit, as there can be no dispute that the ITC is a federal agency created by Congress, not a private entity. Similarly, the Fourth Circuit has held in the context of an Equal Employment Opportunity Commission enforcement action that "[t]here can be no doubt that EEOC is a governmental unit" under § 362(b)(4). *See McLean Trucking*, 834 F.2d at 401 (holding EEOC suit against debtor in bankruptcy to be exempt from automatic stay even where EEOC sought back pay as relief).

[10] The ITC was originally established as the U.S. Tariff Commission in 1916. *See* An Act to Increase the Revenue, and for Other Purposes, Pub. L. No. 64-271, § 700, 39 Stat. 756, 795 (1916) ("That a commission is hereby created and established, to be known as the United States Tariff Commission . . . which shall be composed of six members . . . ."). Thereafter in 1975, the U.S. Tariff Commission was renamed the U.S. International Trade Commission. *See* Act of Jan. 3, 1975, Pub. L. No. 93-618, § 171, 88 stat. 1978, 2009 (codified at 19 U.S.C. § 2231(a) (2006)) ("The United States Tariff Commission . . . is renamed as the [ITC].").

*In re Qimonda AG*, 256 B.R. at 259. To the contrary, the ITC controlled whether the § 337 investigation should commence in the first instance, and it is the ITC that controls the investigation through the Federal Register notice defining the scope of the investigation, *see* 19 C.F.R. § 210.10(b), and the initial determinations of ALJs, which may be reviewed by the six-member Commission, *see, e.g., id.* § 210.23 (permitting *sua sponte* suspension of investigation by ITC); *id.* § 210.50(b)(2) (requiring ITC approval of settlement agreements or consent motions to terminate ITC § 1337 investigations on complaints).

The argument that LSI's filing the complaint transforms the ITC § 337 investigation into an action by a private party, rather than by a governmental unit, is further foreclosed under *U.S. ex rel. Jane Doe 1 v. X, Inc.*, 246 B.R. 817 (E.D. Va. 2000) (Ellis, J.). There, the court held that the automatic stay did not bar a False Claims Act action because the relator's suit was in essence brought "by a governmental unit" within the meaning of § 362(b)(4), notwithstanding the fact that the government had yet to intervene in the suit. *See id.* at 819-20. In reaching this conclusion, the court reasoned that "the United States is the real party in interest in all qui tam suits, including those where the defendant files for bankruptcy." *Id.* at 820.[11] *U.S. ex rel. Jane Doe 1* is instructive here. If the filing of a complaint by a private party on behalf of the government without any governmental intervention or participation is considered to fall within the ambit of § 362(b)(4) because the United States is the real party in interest, it follows *a fortiori* that where, as here, a private party files a complaint upon which a government agency chooses independently to commence an investigation, the government agency's investigation is an action

---

[11] By contrast, the plaintiffs in *Revere Copper and Brass* were two private non-governmental organizations bringing suit on their own behalf to enforce environmental laws, *see supra* note 9, and as such the United States was not the real party in interest there.

brought by a governmental unit.

Nor is there any doubt that the ITC § 337 investigation involving Qimonda is an action that "promote[s] public safety and welfare" and "effectuate[s] public policy," rather than an action that protects the government's pecuniary interest in the debtor's property or "adjudicate[s] private rights." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001) (citations and quotation marks omitted). To be sure, it may sometimes be difficult to distinguish between acts that promote the public interest and acts that further private interests. Recognizing this, the Fourth Circuit in *Safety-Kleen*—a decision construing § 362(b)(4) to reach a state agency's suit to enforce a bond order—sought to provide guidance, stating that "[t]he fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable. Rather, we must determine the *primary* purpose of the law that the state is attempting to enforce." *Id.* (emphasis in original). Notably, the inquiry is objective in that courts are instructed to "examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case." *Id.*

These principles, applied here, compel the conclusion that the ITC's § 337 investigation involving Qimonda is an "action . . . to enforce such governmental unit's . . . police and regulatory power." 11 U.S.C. § 362(b)(4). To begin with, the ITC's investigation is not an attempt to protect its pecuniary interest in the debtor's property, and indeed no party has represented that the ITC in fact has any pecuniary interest in Qimonda's estate. Furthermore, the statutes and regulations governing ITC § 337 investigations plainly evidence an objective purpose of protecting the public interest at each stage of the ITC investigation. For example, the ITC—in consultation with various other federal agencies, *see* 19 U.S.C. § 1337(b)(2)—is

required to consider the effect its determinations will "have upon the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers." 19 C.F.R. § 210.50(a)(2). To that end, the ITC may decline to order exclusion of products that violate § 337 of the Tariff Act of 1930 on the ground that exclusion would not further "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." 19 U.S.C. § 1337(d)(1).[12] And finally, the President is empowered to disapprove an ITC determination specifically on public policy grounds. *See id.* § 1337(j)(2). Accordingly, these provisions are consistent with the legislative history of § 1337, which states that "the public health and welfare and the assurance of competitive conditions in the United States economy must be the overriding considerations in the administration of this statute." Sen. Comm. on Fin., Trade Reform Act of 1974, S. Rep. No. 93-1298, at 197 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7186, 7331; *see also* Comm. on Ways & Means, Trade Reform Act of 1973, H. Rep. 93-571 (1973) (explaining that importation and domestic sales of unlawfully infringing products "constitutes an unfair method of competition" that has a "tendency to substantially injure . . . [the relevant domestic] industry").[13]

In holding that the police and regulatory power exception does not apply to the ITC § 337

---

[12] It is worth noting that although exclusion ordinarily applies only to the named respondent's articles, the ITC is empowered to order general exclusion of articles in certain circumstances. *See* 19 U.S.C. § 1337(d)(2).

[13] Notably, reference to the legislative history to determine the public policy embodied by the Tariff Act prohibitions on the importation of infringing products is appropriate. *See* 2B Sutherland Statutes and Statutory Construction § 56:1 ("The public policy underlying a statutory provision is found by examining the history, purpose, language and effect of the provision.").

investigation involving Qimonda, the Bankruptcy Court gave significant weight to two factors: (i) that "[t]he public policy argument is belied in this case by the fact that several respondents were dismissed from the ITC action because they entered into a settlement"; and (ii) that "[t]he result in the patent infringement case and an ITC action are essentially the same." *In re Qimonda AG*, 425 B.R. at 262-63. These arguments miss the mark. First, the Bankruptcy Court incorrectly discounted the role the ITC performs in approving settlements and terminating investigations. As the controlling regulations state,

> [r]egarding terminations by settlement agreement, consent order, or arbitration agreement . . . , the parties may file statements regarding the impact of the proposed termination on the public interest, and the administrative law judge may hear argument, although no discovery may be compelled with respect to issues relating solely to the public interest. Thereafter, the administrative law judge shall consider and make appropriate findings in the initial determination regarding the effect of the proposed settlement on the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers.

19 C.F.R. § 210.50(b)(2). Plainly, the public interest is a central factor in the ITC's calculus of whether to approve a settlement and terminate an investigation. Likewise, the Bankruptcy Court also failed to appreciate the fundamental differences between ITC § 337 investigations and patent infringement suits. To be sure, ITC § 337 investigations are adversarial in nature. Yet, this fact alone does not support the conclusion that ITC § 337 investigations are analogous to private suits to vindicate intellectual property rights. In fact, key differences distinguish these proceedings. Most notably, the ITC does not award damages for patent infringement; rather exclusion of the infringing article is the only available remedy. *See* 19 U.S.C. § 1337(b) (providing exclusion remedy); *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) ("[T]he ITC does not have the power to award damages for patent infringement."). Moreover, the ITC's

findings with respect to patent validity and infringement have no preclusive effect in any civil action. *See Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-70 (Fed. Cir. 1996) ("[T]he rule that decisions of the ITC involving patent issues have no preclusive effect in other forums has not changed."). Accordingly, ITC § 337 investigations and patent infringement suits are distinct proceedings with different purposes. The ITC provides a forum in which to ensure the protection of the public interest, while patent infringement suits afford patent-holders the opportunity to vindicate their intellectual property rights and seek monetary damages.

In response, appellees, by counsel in the course of oral argument, asserted that a complainant could be compensated as a result of an ITC § 337 investigation. In support of their position, appellees cite 19 U.S.C. § 1373(j)(3), the provision that allows a respondent found by the ITC to have violated § 337 of the Tariff Act of 1930 to continue importing the excluded article during the 60-day presidential review period, provided that the respondent posts a bond. In the event that the ITC determination becomes final on the President's inaction after 60 days or on the President's express approval, "the bond may be forfeited to the complainant" under ITC regulations. *See* 19 U.S.C. § 1373(j)(3); *see also* 19 C.F.R. § 210.50(d). This, according to appellees, renders the police and regulatory power exception to the automatic stay inapplicable because the ITC § 337 investigation furthers a private, pecuniary interest.

This argument is unpersuasive. The fact that the bond is pecuniary in nature does not preclude application of the police and regulatory power exception here because, as discussed *supra*, the ITC's primary purpose in conducting an investigation is plainly not to advance private pecuniary interests. *See McLean Trucking*, 834 F.2d at 402 ("EEOC is still proceeding in the

exercise of its police or regulatory power when it seeks to recover back pay for the victims of alleged unlawful discrimination so as to be exempt from the automatic stay . . . ."). Further, the purpose of the bond is not to compensate the complainant for the respondent's prior unlawful importation of infringing products. Instead, the Federal Circuit has recognized that "the purpose of the bond is to protect the complainant [during the period in which a respondent's allegedly unlawful importation may continue pending a final ITC determination] as well as the public interest." *Biocraft Labs., Inc. v. U.S. Int'l Trade Comm'n*, 947 F.2d 483, 487 (Fed. Cir. 1991).[14] Accordingly, the fact that a bond may be forfeited to the complainant as a result of an ITC § 337 investigation does not render the police and regulatory power exception to the automatic stay inapplicable.

## IV.

In sum, the ITC investigation involving Qimonda for violations of § 337 of the Tariff Act of 1930 was an action brought by a governmental unit to enforce the governmental unit's police and regulatory power within the meaning of § 362(b)(4). As such, the Bankruptcy Court erred in applying the automatic stay to the ITC § 337 investigation under 11 U.S.C. § 362(a). The Bankruptcy Court's decision is therefore reversed.

An appropriate Order shall issue.

Alexandria, Virginia  
June 28, 2010

/s/  
T. S. Ellis, III  
United States District Judge

---

[14] As one ITC opinion has explained, the bond "'offset[s] any competitive advantage resulting from the unfair method of competition or unfair act enjoyed by persons benefitting from the importation.'" In the Matter of Certain Dynamic Random Access Memories, Components Thereof and Products Containing Same, Inv. No. 337-TA-242, USITC Pub. 2034, at 94, 1987 ITC LEXIS 170, at *133 (Nov. 1987) (quoting S. Rep. 93-1298).